IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DIALYSIS CLINIC, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO.1:10-CV-1051-WKW |
| | ) | [WO] |
| CITY OF DOTHAN, ALABAMA, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

On March 28, 2009, heavy rains flooded a business in Dothan, Alabama. Plaintiffs Dialysis Clinic and Beazley Insurance Company, Inc., (collectively "the Clinic") claim Defendants are to blame. Defendants Bay Line Railroad, LLC, and Chattahoochee Bay Railroad, Inc., (collectively "the Railroads") now move for partial summary judgment (Doc. # 74), challenging the Clinic's claim of wantonness. The Railroads also dispute the Clinic's entitlement to an award of future lost profits and the replacement costs of damaged property. The Clinic has responded (Doc. # 96), and the Railroads have replied (Doc. # 99).

**I. JURISDICTION AND VENUE**

28 U.S.C. § 1332(a) confers subject matter jurisdiction. Personal jurisdiction and venue are uncontested, and there are allegations sufficient to support both.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

In 1906, a small culvert was placed under newly built railroad tracks in Dothan, Alabama.  At some undetermined point, the culvert was upgraded with the insertion of a corrugated metal pipe, which protrudes from the mouth of the culvert.  A hundred years later, Chattahoochee Bay Railroad bought that stretch of track.  According to the Railroads, the pipe was there when they bought the tracks.

On March 28, 2009, heavy rains fell on Dothan.  The town was plagued with flooding.  Some estimates put the water as deep as twenty-five feet near the culvert.  (Summ. J. Resp. 4 (Doc. # 96).)  The Clinic's building was not spared.  Not only did the force of the flood damage the building, the Clinic claims the waters, which were contaminated with biohazardous waste, rendered its dialysis machines and other equipment unusable.  The Clinic determined that repairing the new facility would be cost prohibitive, so it instead chose to construct a new facility at a different location.

After the flood, inspections revealed the culvert was clogged.  (Summ. J. Resp. 4.)  A city engineer noticed damage to the corrugated metal pipe, which he thought predated the flood.  (Summ. J. Resp. 5.)  According to the mayor of Dothan, the culvert's failure directly caused "upstream property owners [to suffer] extensive flooding damage."  (Summ. J. Resp. 5–6.)  The Clinic, an upstream property owner,

2

blames the Railroads for its losses, which include lost profits, loss of equipment, and loss of the building.

The Railroads, however, argue they had no reason to know the culvert would fail. To that end, they submit evidence that a railroad employee inspected the culvert about six times a year. According to the Railroads, an inspection that took place only twelve days before the storm revealed nothing to cause concern.

On December 10, 2010, the Clinic filed this lawsuit against the City of Dothan, the Railroads, and Northstar Engineering Services, Inc. The City and Northstar were dismissed on September 17, 2012. The case is before the court on the Railroads' Motion for Partial Summary Judgment.

### III.  STANDARD OF REVIEW

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no genuine issue of material fact, or by showing that the nonmovant has failed to present evidence in support of some element of its

case on which it bears the ultimate burden of proof. *Id.* at 322-24. "[T]he court must view all evidence and make all reasonable inferences in favor of the [nonmovant]." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

Once the moving party meets its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Rule 56(e)(2). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine factual dispute exists if "a reasonable jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (internal quotation marks and citation omitted).

## IV. DISCUSSION

Only the question of wantonness is before the court for summary judgment, as it is the only disputed matter that is appropriately termed a "claim or defense." *See* Fed. R. Civ. P. 56(a). The questions of damages regard neither a claim nor defense, nor a part of one; they concern only the proper remedy due the Clinic should its claims succeed and the Railroads' defenses fail. Yet the questions of wantonness and damages before the court have been fully briefed, and in the interest of economy, this

opinion will address both.

## A. Wantonness

The evidence of wantonness in this case is sparse. But it is not non-existent. The Clinic has offered evidence that the culvert's condition prior to the storm, of which the Clinic claims the railroad should have known, caused the Clinic's damages. Much of the evidence the parties submit on the wantonness claim comes in the form of deposition testimony. A witness for the Clinic testifies the corrugated metal pipe appeared to have been damaged before the storm. Railroad witnesses, however, say the inspections that took place shortly before the storm revealed nothing to cause concern. The Railroads also claim the flood was a cataclysmic Act of God, abrogating their responsibility. The crucial question here is whom to believe.

On this record, the better course is to let each party submit evidence on the wantonness claim at trial (evidence that will likely be identical to that submitted on the negligence claim). *See Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 255 (1986) (stating the "trial court may . . . deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial").

## B. Damages

On summary judgment, the parties ask whether Alabama law permits recovery of the following: (1) costs incurred in building a new clinic in a different location, (2)

5

replacement costs of damaged personal property, and (3) damages for lost profits.

### 1. *Damages to Real Estate*

Though the culvert at issue was built over a century ago, the Alabama rule for the proper measure of damages to real property is even older. In 1904, the Alabama Supreme Court cited an 1891 treatise for the measure of damages to real property. *Brinkmeyer v. Bethea*, 35 So. 996, 997 (1904) (citing 3 Theodore Sedgwick, A Treatise on the Measure of Damages § 932 (8th ed. 1891)). According to that treatise, damage to real property is measured by either "the diminution of the market value" or "the cost of repairing," depending on the permanence of the harm. 3 Sedgwick, *supra*, § 932. But whether the harm is permanent or temporary, if "the cost of repairing the injury is greater than the diminution in market value of the land, the latter is *always* the true measure of damages." *Id.* (emphasis added); *see also, Poffenbarger v. Merit Energy Co.*, 972 So. 2d 792, 801 (Ala. 2007) (quoting *Sedgwick on Damages* at length).

The diminution-in-value rule was reaffirmed as a limit on damages in 1921 after a Birmingham sewer flooded a man's home. The Court of Appeals of Alabama said the remedy for such harm is either the diminution in value suffered by the property, or restoration costs if the damage can be repaired "at *less costs* than the diminution in value." *City of Birmingham v. Kircus*, 99 So. 780, 784 (Ala. App. 1924) (emphasis

added). And in 1979, the Alabama Supreme Court, writing on the proper measure of damages to real property, asked itself a question: "What will compensate the plaintiff for the injury he has received?" *Borland v. Sanders Lead Co.*, 369 So. 2d 523, 530 (Ala. 1979). The *Borland* court answered its own question by setting the measure of damages as either the diminution in value or "the cost of restoration if this, plus rental value, is *less than* the diminution in value." *Id.* (emphasis added).

As the decisions suggest, Alabama courts have treated diminution in value as an upper limit on the measure of damages for quite some time now. Indeed, that principle is so uncontroversial that the Alabama Supreme Court did not have occasion to expressly affirm it until 2007. In *Poffenbarger v. Merit Energy Co.,* the Poffenbargers, whose land was contaminated by an oil spill, sued for trespass, nuisance, wantonness, and negligence (which are, as it happens, the Clinic's claims that will proceed to trial here). 972 So. 2d 792, 793 (Ala. 2007). The *Poffenbarger* case was the Alabama Supreme Court's first chance to directly answer the following question: "Under Alabama law, what is the general rule for the measurement of direct, compensatory damages for an injury to real property when the cost to remediate the property exceeds the diminution in the value of the property caused by the injury?" *Id.* at 795. The answer came as no surprise: "[T]he appropriate measure of direct, compensatory damages to real property generally is the diminution in the

value of that property, even when the cost to remediate the property exceeds the diminution in the value thereof." *Id.* at 801.

Today, as in 1891, the diminution-in-value rule is a matter of hornbook law. According to the most recent edition of *Alabama Law of Damages*, "when the cost to remediate the property exceeds the diminution in value because of the harm, the plaintiff is limited to the diminution in value." Alabama Law of Damages § 33:1 (6th ed.) (citing the *Poffenbarger* decision).

It appears, then, that the diminution-in-value rule is quite well settled. As with most general rules, it may admit exceptions:  But the *Poffenbarger* decision left that question intentionally unanswered.  *See Poffenbarger*, 972 So. 2d at 801 n.9.  The Clinic argues this case presents such an exception and that it should be able to recover the costs it incurred in purchasing new property and constructing a new building.  But the Clinic has not cited a single case, and the court is aware of none, where an Alabama court departed from the diminution-in-value rule in similar circumstances.  Nor has it shown that replacement costs are an appropriate measure of damages to real property. Because the court sits in diversity, it must respect the United States Supreme Court's pronouncement that "the highest court of the state is the final arbiter of what is state law." *West v. Am. Tel. & Tel. Co.,* 311 U.S. 223, 236 (1940); *see also* 28 U.S.C. § 1652.  If the law in Alabama was not settled before the *Poffenbarger* decision, it is

now. The "measure of direct, compensatory damages to [the Clinic's] real property is the diminution in the value of that property, even [if] the cost to remediate that property exceeds the diminution in the value thereof." *Poffenbarger*, 972 So. 2d at 801.

That is not to say the costs of repair or rebuilding must be strictly excluded from evidence. To the extent those costs are relevant (a question the court does not address here), the Clinic is free to prove its damages using whatever admissible evidence it chooses.

The court is not unsympathetic to the financial and practical realities of this case. Application of the diminution-in-value rule may leave the Clinic to bear a portion of its losses. But the Alabama Supreme Court unflinchingly applied the diminution-in-value rule when the Poffenbargers, whose property lost only $6,000 of its market value, faced estimated remediation costs of over $2,000,000. *Id.* at 793. The equities of that case did not sway the Alabama Supreme Court, which has the power to effect change in Alabama law; the equities of this case cannot change the rule this court is duty-bound to apply.

### 2. *Damages to Personal Property*

According to the Alabama Pattern Jury Instructions, the measure of damages to personal property is "the difference between the reasonable market value of [the

property] immediately before the harm and its reasonable market value immediately after the harm." Alabama Pattern Jury Instructions: Civil 11.34 (2d ed.) The Pattern Jury Instructions allow admission of repair-cost evidence to help determine the property's value, but only subject to a caveat: "[T]he correct measure of damages is the difference between the reasonable market value immediately before the harm and the reasonable market value immediately after the harm." *Id.* at 11.35. Against this background, the Clinic's arguments for an alternative measure of damages fail to persuade.

First, the Clinic cites *Alford v. Jones* to say the diminution-in-value rule "is not . . . an absolute measure of damages for the injury to a personal automobile, but . . . only a principle element thereof." 531 So. 2d 659, 660 (Ala. 1988). True, the passage the Clinic quotes does subject the diminution-in-value rule to the "primary and basic principle that it is the purpose of the law to fairly compensate the injured for the wrong committed." *Id.* But the very next sentence in the Clinic's quotation suggests the *Alford* holding does not change the proper measure of damages; it only addresses the evidence admissible to prove value: "No hard and fast rule should be imposed upon the trial court and the admission of evidence touching the elements *upon which a fair*

*judgment of the loss in market value may be ascertained.*" *Id.* (emphasis added).[1] Even more significant is the passage omitted from the Clinic's quotation: "In fixing the measure of damages it is the aim of the law to reimburse the actual loss. This loss is usually ascertained by finding the difference between the reasonable market value immediately before and immediately after the injury. This is generally declared to be the true measure of damages." *Id.* (quotations omitted). The *Alford* decision, then, provides guidance on what sorts of evidence the Clinic may introduce to prove the diminution in value its personal property suffered; it does not, however, warrant departure from the general diminution-in-value rule here.

Nor does *Lary v. Gardener*, the other decision the Clinic relies upon, support an alternative to the diminution-in-value rule. 908 So. 2d 955, (Ala. Civ. App. 2005) In *Lary*, the Court of Civil Appeals acknowledged that not every item of personal property has a market value. *Id.* at 959. In such a case, a plaintiff may prove value through measures other than market value. *Id.* at 959–60. Neither party here suggests the Clinic's personal property was without market value prior to the flood, so the *Lary* rule has no application here.

---

[1] The Clinic's brief inadvertently misquotes this passage to end with "the loss *and* market value may be ascertained." The difference between *and* and *in* is significant, as the Clinic's misuse of the word *and* suggests inquiries into loss and market value might be separate. The true quote, however, emphasizes the ultimate purpose for which repair value may be admitted, *viz.*, to prove loss *in* market value.

11

The correct rule is stated in the final case the Clinic cites: "[A]n owner of damaged property is generally not entitled to recover the replacement cost of that property as its full measure of damages; the replacement cost is merely one factor to consider in arriving at a proper valuation of the property before and after the injury." *MAT Sys., Inc. v. Atchison Props., Inc.*, 54 So. 3d 371, 379 (Ala. Civ. App. 2010). Applying that rule, the Alabama Court of Civil Appeals held that evidence of repair value, standing alone, cannot provide adequate evidence of diminution in value when property has an ascertainable market value. *Id.* at 382. The facts of this case warrant no deviation from the general principle, so the diminution-in-value rule will provide the measure of damages to the Clinic's personal property.

### 3. *Future Lost Profits*

The Railroads object to the Clinic's demand for future lost profits. To that end, they argue that "the standard for recovery of lost profits requires that the [Clinic] prove any lost profits by a *reasonable certainty*, and evidence related to speculative or remote profits are not to be considered as an element of damages." (Summ. J. Br. 17.) The Clinic agrees. (*See* Summ. J. Resp. 32 ("To recover future lost profits, DCI must only demonstrate with a reasonable certainty the amount claimed.").) The dispute here is not over the proper rule, but adequacy of the Clinic's evidence.

In support of its claim for future lost profits, the Clinic submits the report of Neal S. Cason, a forensic accounting expert. The Railroads suggest Mr. Cason's report should be dismissed as inconsistent and speculative. The Railroads also offer testimony of their own accounting expert, who claims the Clinic has been turning a profit since April of 2010. The Clinic, of course, takes the position that Mr. Cason's report demonstrates its future lost profits to a reasonable certainty.

This dispute can be resolved only by weighing the credibility of the competing experts. The court cannot make such a determination on summary judgment, so the question of the Clinic's entitlement to future lost profits must await a jury determination at trial.

## V. CONCLUSION

Accordingly, it is ORDERED that the Railroads' Motion for Partial Summary Judgment (Doc. # 74) is DENIED on the claim of wantonness. As to the other questions raised in the Railroads' motion, any compensatory damages due for harm to the Clinic's real and personal property will be measured with the old but trusty diminution-in-value rule that Alabama courts have applied for decades. The Clinic's entitlement to future lost profits can be resolved only at trial.

DONE this 1st day of November, 2012.

                                                   /s/ W. Keith Watkins  
                                    CHIEF UNITED STATES DISTRICT JUDGE