IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DIALYSIS CLINIC, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO.1:10-CV-1051-WKW |
| | ) | [WO] |
| BAY LINE RAILROAD, LLC, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

On March 28, 2009, heavy rains flooded a business in Dothan, Alabama. Plaintiffs Dialysis Clinic, Inc., and Beazley Insurance Company, Inc., (collectively "the Clinic") claim Defendants Bay Line Railroad, LLC, and Chattahoochee Bay Railroad, LLC, (collectively "the Railroads") are to blame. The parties have filed motions seeking to exclude all or part of the testimony of six expert witnesses. This order will address only the Clinic's motions to exclude the testimony of Chester Rhodes and Burl Daniel (Doc. # 90), and Larry Young (Doc. # 91). For the reasons that follow, the motions are due to be granted.

**I. JURISDICTION AND VENUE**

28 U.S.C. § 1332(a) confers subject matter jurisdiction. Personal jurisdiction and venue are uncontested, and there are allegations sufficient to support both.

## II.  STANDARD OF REVIEW

The admissibility of expert testimony is governed by Rule 702 and *Daubert*, and its progeny.  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)  the testimony is based on sufficient facts or data;
> (c)  the testimony is the product of reliable principles and methods; and
> (d)  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert*, the Supreme Court made it clear that Rule 702 assigns the trial court a gatekeeping role to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 & 597 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) ("[T]he Federal Rules of Evidence 'assign to the trial judge the task of ensuring that an expert's testimony rests both on a reliable foundation and is relevant to the task at hand.'" (quoting *Daubert*, 509 U.S. at 596)).  This gatekeeping responsibility is the same when the trial court is considering the admissibility of expert technical evidence.  *Kumho Tire*, 526 U.S. at 147.

In the Eleventh Circuit, expert testimony is admissible under Rule 702 if it satisfies three broad requirements:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1999)). These requirements are known as the "qualifications," "reliability," and "helpfulness" prongs. *See id.*

Moreover, whether the expert testimony will assist the trier of fact in understanding the evidence or a fact in issue "goes primarily to relevance." *Daubert*, 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (citation and internal quotation marks omitted). The Fifth Circuit said it this way: Assisting the trier of fact means that "the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992).

In the end, however, the court's gatekeeping role under *Daubert* "is not intended to supplant the adversary system or the role of the jury." *Allison v. McGhan*, 184 F.3d 1300, 1311 (11th Cir. 1999). Where the basis of expert testimony satisfies Rule 702, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." *Daubert*, 509 U.S. at 596.

### III. BACKGROUND

This case hinges upon resolution of a relatively simple question: Did the Railroads cause the Clinic's flood damage by improperly maintaining a culvert? To answer that question, the parties have enlisted a slew of experts, and each side of this dispute has moved to exclude select expert testimony of the other. This matter comes before the court on two of those motions, which challenge the opinions of three defense experts. (*See* Docs. # 90, 91.)

### IV. DISCUSSION

At issue here is the expert testimony of Chester Rhodes, Burl Daniel, and Larry Young. This opinion addresses each in turn.

**A. Chester Rhodes**

Chester Rhodes, an expert for the Railroads, has been involved in the railroad industry for over forty years. In his report, Mr. Rhodes reaches three conclusions: (1)

there were no issues with the culvert prior to the storm;[1] (2) the corrugated metal pipe was properly installed in the culvert prior to the storm; and (3) prior to the storm, the Railroads were in full compliance with all applicable regulations.

### 1. *On the Culvert's Uneventful History*

In his report, Mr. Rhodes's bases his first conclusion on "review of depositions by Dewayne Swindall and Jeff Richardson and my own personal knowledge." (Doc. # 101-1, at 6.) Mr. Rhodes's personal knowledge is not a sufficient ground for this opinion; even if there was a history of problems with the culvert, there is no reason Mr. Rhodes would have known. Indeed, the Railroads could call virtually *anyone* to testify that, based on his own personal knowledge, there was no history of issues with the culvert. Absent some explanation of how Mr. Rhodes would have known of problems with the culvert, his lack of such knowledge cannot be used to suggest affirmatively there were none.

Mr. Rhodes's first conclusion, then, is supported only by the deposition testimony of two of the Railroads' employees. One of those employees has been designated as a witness who will testify at trial (Doc. # 110, at 2), and presumably the other will be called to do so as well. Mr. Rhodes's expertise does not appear to add

---

[1] Mr. Rhodes's report actually says "no exceptions were taken to the subject culvert prior to the flood." (Doc. # 101-1, at 6.) The court follows the Railroads' lead to paraphrase that opinion as saying there were no issues with the culvert. (*See* Doc. # 101, at 4–5.)

anything to that testimony; rather, his report and the Railroads' brief do not indicate he did anything more than take the employees at their word and conclude there was no history of issues with the culvert. Allowing Mr. Rhodes's testimony on his first conclusion would be needlessly cumulative and would not "help the trier of fact to understand the evidence," so it is due to be excluded. *See* Fed. R. Evid. 403, 702.

### *2. On the Corrugated Metal Pipe's Proper Installation*

Next, Mr. Rhodes concludes that the corrugated metal pipe extension was properly installed before the storm of 2009. Even assuming Mr. Rhodes is qualified to render an opinion on the installation of the pipe, nothing in his report suggests he had any basis for concluding the pipe was properly installed *before* the flood. Mr. Rhodes's report states only that he visited the culvert in May of 2012. (*See* Doc. # 101-1, at 5.) By then, the old corrugated metal pipe that allegedly caused the flood had been removed and replaced with a new one, which was properly installed in Mr. Rhodes's opinion. (*See* Doc. # 101-1, at 5.)

The court must act as a gatekeeper to ensure expert testimony is the product of "reliable principles and methods." Fed. R. Evid. 701. Nothing in Mr. Rhodes's report or the Railroads' arguments sheds any light on the methodology Mr. Rhodes employed to conclude the old corrugated metal pipe was properly installed *before* the

storm by inspecting a different pipe installed *after* the fact. As a result, Mr. Rhodes's second opinion must be excluded.

### 3. On the Railroads' Regulatory Compliance

Finally, Mr. Rhodes concludes that "Chattahoochee Bay Railroad was in full compliance with all applicable Federal Railroad Administration Regulations" prior to the flood. (Doc. # 101-1, at 6.) In this circuit, however, it is well settled that "[a] witness . . . may not testify to the legal implications of conduct; the court must be the jury's only source of law. *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990); *see also Nicholson v. McCabe*, No. CV-02-H-1107-S, 2003 WL 25676474, at *1 (N.D. Ala., June 2, 2003) (finding an expert's opinion that a defendant violated a federal regulation was an inadmissible legal conclusion). Further, as far as regulatory compliance is concerned, it does not appear that Mr. Rhodes's testimony would "bring to the jury more than the lawyers can offer in argument." *Salas*, 980 F.2d at 305. Accordingly, Mr. Rhodes's legal conclusion that the Railroads were in full compliance with federal regulations must be excluded.

### B. Burl Daniel

Burl Daniel, an expert for the Railroads, opines that the Clinic could have obtained renewal flood insurance had it chosen to repair the old building. (Doc. # 101, at 22.) According to the Railroads, Mr. Daniel's opinions are relevant to this

7

case because the Clinic argued replacement costs define the proper measure of damage to the Clinic's building. Because the court has now rejected that argument (*see* Doc. # 122), Mr. Daniel's testimony is no longer relevant. As a result, the Clinic's motion to exclude Mr. Daniel's testimony is due to be granted.

## C. Larry Young

In a twenty-three-page brief supported by 460 pages of exhibits, the Clinic moves to exclude the testimony of Larry Young to the extent he would estimate the cost of replacing storm-damaged dialysis machines. The Clinic does not move to exclude Mr. Young's calculation of the value of the damaged dialysis machines using a cost-per-hour valuation. (*See* Doc. # 113, at 2.)

The Railroads oppose the motion in a ten-page brief supported by forty-two pages of exhibits, arguing that "Young's 'cost-per-hour' calculation is an essential element in determining the diminution value of [the Clinic's] property." (Doc. # 105, at 2 n.1.) The Railroads concede, however, that the "'cost-per-hour' calculation is the more accurate reflection of the fair market value of the dialysis machines" when compared to Mr. Young's estimated replacement costs. (Doc. # 105, at 3 n.2.)

The Clinic's six-page reply is largely devoted to pointing out that the lack of disagreement between the parties on this point. Both the Clinic and the Railroads agree Mr. Young should be allowed to testify on the cost-per-hour valuation of the

dialysis machines; neither the Clinic nor the Railroads have argued Mr. Young's testimony on replacement value should be admitted. The court will not second-guess 583 pages of filings that show no hint of meaningful disagreement, so the Clinic's motion to exclude Mr. Young's testimony on replacement costs is due to be granted.

## V.  CONCLUSION

Accordingly, it is ORDERED that

(1) The Clinic's Motion to Exclude the Expert Opinions of Chester Rhodes and Burl Daniel (Doc. # 90) is GRANTED as to the opinions challenged in that motion;

(2) The Clinic's Motion to Exclude the Testimony of Larry Young (Doc. # 91) is GRANTED as to the opinions challenged in that motion.

DONE this 9th day of November, 2012.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE